O

# United States District Court
# Central District of California

| | |
|---|---|
| WILLIAM KRINSKY,<br><br>            Plaintiff,<br><br>    v.<br><br>ISRAEL DISCOUNT BANK OF NEW YORK; and DOES 1–10, inclusive,<br><br>            Defendants. | Case № 2:15-cv-04829-ODW(MRWx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [18]** |

## I.   INTRODUCTION

This is a whistleblower retaliation action filed by Plaintiff William Krinsky against his former employer, Defendant Israel Discount Bank of New York ("IDBNY"). IDBNY moves for summary judgment, arguing, *inter alia*, that Plaintiff's alleged whistleblowing was not the reason he was terminated. The Court concludes that there are genuine issues of material fact that preclude summary judgment based on lack of causation, and therefore **DENIES** the Motion with respect to the retaliation and wrongful discharge claims. However, because there is no evidence of malice, fraud, or oppression, the Court **GRANTS** the Motion with respect

to Plaintiff's prayer for punitive damages.[1] (ECF No. 18.)

## II. FACTUAL BACKGROUND

On September 15, 2014, IDBNY hired Plaintiff as Vice President of California branches, where he was charged with "handling a full loan portfolio and developing additional Commercial Real Estate secured financing business." (SUF 11.) Before this, Plaintiff obtained a Masters of Business Administration from Northwestern University and worked in the banking industry for thirty years. (SUF 7, 43.)

Plaintiff's direct supervisor was Rachel Manger. (SUF 12.) Although Manger went on vacation shortly after Plaintiff was hired, she assigned Plaintiff several tasks to perform in her absence, including familiarizing himself with IDBNY's loan policies and conducting an annual review of the loan files of Stanford Capital and Griffith Partners. (SUF 14, 44, 45.) While reviewing the loan files, Plaintiff learned the following: (1) the loan to Stanford Capital was secured by a building called the Los Angeles Fashion Mart, which rented space to a company called QT Fashions (SUF 29, 47); (2) the loan to Griffith Partners was secured by a different building, which rented space to a company called Pacific Eurotex (SUF 24, 47); (3) QT Fashions and Pacific Eurotex, as well as their respective owners, were the subject of two recently unsealed federal indictments for money laundering (SUF 24, 26, 29, 32, 47); and (4) the Los Angeles Fashion Mart had significant and unexplained disparities in rent rolls, and had leases out for signature for excessively long periods of time, both of which are considered red flags for money laundering activity. (SUF 48.)[2]

Plaintiff also learned that both Griffith Partners and Stanford Capital were controlled by an individual named David Taban. (SUF 47.) Taban was one of IDBNY's largest customers, with a loan exposure of up to $60 million. (SUF 49.)

---

[1] After considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.
[2] While Plaintiff's expert Richard Speier did not use the words "red flag" in his deposition testimony, it is clear that this was his basic opinion. IDBNY's objections based on relevance, foundation, the best evidence rule, and improper legal argument are overruled.

2

Moreover, Taban owned the building that housed IDBNY's Los Angeles headquarters. (*Id.*)[3]

Manger returned from vacation on October 20, 2014. (SUF 44.) Upon her return, Plaintiff brought the foregoing information to Magner's attention, and suggested that IDBNY stop doing business with Taban. (SUF 25, 30, 50.) By then, Manger and other personnel at IDBNY were aware of the Pacific Eurotex indictment and were cooperating with the government with respect to that indictment. (SUF 27, 28, 33, 50.)[4] However, they were unaware of the QT Fashions indictment. (*Id.*)[5] It is unclear whether Manger disclosed her knowledge of the Pacific Eurotex indictment to Plaintiff. Regardless, Manger did not take any action in response to Plaintiff's disclosure or report her conversation with Plaintiff to her superiors. (SUF 51.)[6]

As for the annual reviews for the two loans, Plaintiff completed both reviews and sent them to several IDBNY employees for review, each of whom "signed off" on them without correction. (SUF 46.)[7] Nevertheless, Manger was displeased with the quality of the reviews. (*See* SUF 16.)[8] She believed the reviews simply "regurgitated some information," and that the numbers in at least one of the reviews were inaccurate. (Manger Depo, 44:23–45:23.)

---

[3] IDBNY's objection based on relevance is overruled. The fact that Taban rented building space to IDBNY has a tendency to show that IDBNY did not want to investigate Taban's possible connection to his tenant's alleged money laundering scheme.

[4] It is unclear to what extent IDBNY was "cooperating with the federal government" with respect to the Pacific Eurotex indictment. (Kim Depo, 86:18–88:10.)

[5] While both Manger and Kim eventually learned of the QT Fashions indictment, it is unclear exactly when that happened. (Manger Depo, 34:4–21, 37:19–38:3; Kim Depo, 86:18–87:17.) Moreover, the testimony cited by IDBNY does not in the least support its assertion that it was cooperating with the government with respect to the QT Fashions indictment. (Kim Depo. 31:10–32:10.)

[6] IDBNY's objection to this fact based on improper legal argument is overruled.

[7] IDBNY's objection to this fact based on relevance is overruled. The fact that other competent persons at IDBNY reviewed and accepted Plaintiff's work product has a tendency to show that his analysis was in fact correct. Whether or not the persons who reviewed the annual reviews were technically Plaintiff's "supervisors" is irrelevant.

[8] The Court agrees with Plaintiff that there is a dispute as to whether the annual reviews were *actually* inaccurate or otherwise inadequate. (*See supra* note 6.)

In November 2014, Manger reported to her supervisor, Kiyoun Kim, that she was "disappointed in [Plaintiff's] performance." (SUF 17; Manger Depo, 76:9–10.) On December 2, 2014, Manger and Kim met with Plaintiff to discuss his performance problems and to issue him a written warning. (SUF 18.) The written warning identified multiple performance issues such as errors in work product, failure to comply with instructions from his superiors, and failure to "take ownership or acknowledge mistakes." (Krinsky Depo., Ex. 4.) Plaintiff was also cautioned that failure to improve performance in all areas would result in termination. (*Id.*) Plaintiff was asked to sign the warning notice, but refused to do so. (SUF 20.)[9] Plaintiff later testified that he refused to sign the notice "because there was no obligation to sign it." (Krinsky Depo., 47:12–17.) Plaintiff was also concerned that the warning was a "warning shot because [he] raised concerns about money laundering." (Krinsky Depo., 47:12–17, Ex. 4; SUF 54.) After the meeting with Manger and Kim, Plaintiff met privately with Manger, at which time he reiterated his concerns about money laundering. (SUF 55.) Manger laughed and responded, "That's what these tenants do. It's the fashion district." (*Id.*)[10]

On December 9, 2014, Plaintiff sent a lengthy e-mail to the President of IDBNY and the Executive Vice President in charge of Human Resources. (SUF 21, 56.) Plaintiff made a point-by-point rebuttal of every issue brought up in his warning letter, and generally complained about Manger's management style. (*Id.*) Plaintiff also complained that Manger had a "cavalier attitude regarding customers who have rented space to tenants who use it for the purpose of Money Laundering." (Krinsky Depo, Ex. 5.) However, Plaintiff's complaints about money laundering constituted a relatively small portion of the sizeable e-mail. (*Id.*)

---

[9] The Court agrees with IDBNY that there is no dispute that Plaintiff refused to sign the warning letter at the conclusion of the December 2, 2014 meeting, regardless of his reason.

[10] IDBNY argues that this fact is disputed, but Manger never affirmatively testified that she did not say this. Thus, based on the evidence before the Court, there is no dispute as to this fact—and even if there was a dispute, the Court would need to resolve the dispute in Plaintiff's favor. The Court also overrules IDBNY's objections based on relevance and hearsay.

Two days later, IDBNY terminated Plaintiff's employment. (SUF 57.) Plaintiff was given a letter setting forth the reasons for his termination, including the fact that his recent e-mail proved that he was unwilling to either accept constructive criticism or work to improve the performance problems identified in the warning letter. (Krinsky Depo., Ex. 10.) The letter also addressed Plaintiff's accusations of a money laundering cover up, describing the accusations as "uninformed and speculative" and admonishing Plaintiff for "rais[ing] them only in response to the constructive criticism of your performance" rather than through IDBNY's confidential reporting process. (*Id.*) Kim asked Plaintiff if he had any further information regarding money laundering, but Plaintiff declined to share anything further. (*See* SUF 41; Kim Depo, 85:8–25.)

On May 22, 2015, Plaintiff filed his Complaint in the Los Angeles Superior Court. (ECF No. 1-2.) On June 25, 2015, IDBNY removed the case to this Court. (ECF No. 1.) On December 28, 2015, IDBNY moved for summary judgment. (ECF No. 18.) Plaintiff timely opposed, and IDBNY timely replied. (ECF Nos. 19, 27.) This Motion is now before the Court for consideration.

### III. LEGAL STANDARD

Summary judgment should be granted if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine dispute for trial. *Id.*; Fed. R. Civ. P. 56(c).

A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.

*Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, there must be more than a mere scintilla of contradictory evidence. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). A court may not weigh conflicting evidence or make credibility determinations. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

## IV.　DISCUSSION

Plaintiff asserts two causes of action: (1) retaliation under California Labor Code section 1102.5; and (2) wrongful termination in violation of public policy.[11] (ECF No. 1-2.) IDBNY attacks both claims on several grounds. First, it argues that Plaintiff cannot prevail on his retaliation claim because the undisputed facts show that his comments about money laundering were not the reason he was terminated. (Mot. 8–11.) Second, it argues that the wrongful termination claim fails for essentially the same reason. (Mot. 11–12.) Third, it argues that Plaintiff is not entitled to punitive damages because no reasonable jury could find that IDBNY acted with malice, oppression, or fraud. (Mot. 12–13.) Finally, IDBNY argues that it is not liable for civil penalties because it is neither a corporation nor a limited liability company. (Mot. 13.) The Court agrees that Plaintiff is not entitled to punitive damages, but is not persuaded by the other arguments.

### A.　Labor Code Section 1102.5

IDBNY argues that Plaintiff cannot establish a prima facie claim of retaliation because no reasonable jury could find that his comments about money laundering were a contributing factor to his termination. IDBNY also argues that it had a legitimate, non-retaliatory reason for terminating Plaintiff, and that there is

---

[11] The parties previously stipulated to dismiss Plaintiff's claim under California Labor Code section 970. (ECF No. 17.)

insufficient evidence for a jury to conclude that such reason was merely a pretext for the retaliation. (Mot. 8–11.)

Section 1102.5 provides: "An employer . . . shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information . . . to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation . . . ." Cal. Lab. Code § 1102.5(b).

A claim under section 1102.5 is analyzed using the traditional burden-shifting analysis for retaliation claims. *Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal. App. 4th 1378, 1384 (2005). That is, "(1) the plaintiff [must] establish a prima facie case of retaliation, (2) the defendant [must] provide a legitimate, nonretaliatory explanation for its acts, and (3) the plaintiff [must] show this explanation is merely a pretext for the retaliation." *Id.* To establish a prima facie case of retaliation, Plaintiff must show (1) he engaged in a protected activity, (2) his employer subjected him to an adverse employment action, and (3) there is a causal link between the two. *Id.*

### 1. Causation

IDBNY challenges the causation element of Plaintiff's prima facie case. IDBNY points out that the indictments were unsealed and thus public knowledge when Plaintiff first spoke to Manger, and that IDBNY was already cooperating with the federal government with respect to those indictments. Thus, IDBNY argues, no reasonable jury could conclude that it would terminate Plaintiff "for fear he would disclose this very same information" to the government. (Mot. 9.)[12]

---

[12] IDBNY argues in reply that Plaintiff did not reasonably believe that the conduct he was disclosing violated the law. (Reply 4.) This issue is distinct from causation. Because IDBNY challenged only causation in their moving papers, the Court declines to consider any argument relating to the reasonableness of Plaintiff's belief.

IDBNY's argument fails for several reasons. First, IDBNY does not show that it was cooperating with the government with respect to the QT Fashions indictment. Second, Plaintiff's claim is not based on the fact that he disclosed the existence the indictments to Manger; rather, it is based on Taban's possible connection to the underlying money laundering schemes, and the fact that IDBNY appeared unwilling to investigate that connection because Taban was one of IDBNY's largest customers, had a loan exposure of up to $60 million, and owned the very building that housed IDBNY's Los Angeles office. IDBNY's bare assertion that it was "cooperating with the government" with respect to one indictment does not show that the federal government was aware of either Taban's connection or IDBNY's refusal to investigate or disclose his connection to the indictments.

Third, the other evidence presented, read in the light most favorable to Plaintiff, demonstrates a clear connection between Plaintiff's complaints and his termination. After Plaintiff informed Manger of the money laundering red flags and suggested that IDBNY terminate its relationship with Taban, Manger not only failed to report the conversation to her superiors (despite being previously unaware of at least one of the indictments), but only a few weeks later issued him a formal written warning that included a threat to terminate his employment. When Plaintiff again brought up the money laundering issue to Manger, her comments and attitude made clear that she was not planning to do anything about it. And when Plaintiff then complained to IDBNY's President about Manger's indifference, IDBNY immediately terminated him. Indeed, the termination letter itself reprimanded Plaintiff for discussing the money laundering activities by email. This is sufficient for a jury to find a causal connection between the complaints and his termination. *See, e.g.*, *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004) ("When adverse employment decisions closely follow complaints of discrimination, retaliatory intent may be inferred."); *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000) (same).

### 2. Pretext

Even assuming IDBNY can establish that Plaintiff's poor work performance was a legitimate, non-retaliatory reason for terminating him, there is sufficient evidence from which a jury could conclude that this was simply pretext.

"The plaintiff may establish pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. Circumstantial evidence of pretense must be specific and substantial in order to create a triable issue with respect to whether the employer intended to discriminate on an improper basis." *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 68–69 (2000) (citations and internal quotation marks omitted). "An employee in this situation cannot simply show the employer's decision was wrong, mistaken, or unwise. Rather, the employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* (citations, brackets, and internal quotation marks omitted).

Plaintiff meets this standard. Viewed in the light most favorable to Plaintiff, Manger's initial decision to initiate disciplinary proceedings against Plaintiff appears hasty and unwarranted. Manger was not present for virtually the entire first month of his employment, yet she apparently concluded soon after her return that Plaintiff was deserving of a written warning and possible termination. Plaintiff also makes a point-by-point rebuttal of each and every infraction listed in the written warning, and the explanations given by Plaintiff are not so implausible that the Court could grant summary judgment based on lack of pretext.

Finally, while Plaintiff may have demonstrated poor judgment in e-mailing IDBNY's President to gripe about the warning letter and Manger's management, this is not the slam-dunk evidence of lack of pretext that IDBNY makes it out to be. A

jury could reasonably construe the email as Plaintiff's attempt to defend himself against baseless accusations that were spurred by him bringing complaints about a prominent client's involvement in money laundering, and that Plaintiff was thereafter terminated because he was clearly not willing to drop the issue. Summary judgment based on lack of pretext is thus inappropriate.

**B.   Wrongful Termination**

IDBNY contends that the wrongful termination claim must fail because (1) there is no causal connection between the alleged money laundering complaints and his termination, and (2) the claim lacks a statutory predicate without a viable section 1102.5 claim. (Mot. 11–12.) The first argument essentially repeats IDBNY's prior causation argument, and is therefore rejected. *See Weinstein v. HBE Corp.*, No. 2:13-CV-04643-CAS, 2014 WL 5602510, at *9 (C.D. Cal. Nov. 3, 2014) (rejecting a challenge to a section 1102.5 claim warrants rejecting essentially the same challenge to a wrongful termination claim where the two claims are based on the same set of facts). The second argument would require the Court to first grant summary judgment on the section 1102.5 claim. As the Court declines to do so, Plaintiff's argument fails.

**C.   Punitive Damages**

IDBNY argues that no reasonable jury could conclude that Plaintiff is entitled to punitive damages. (Mot. 12–13.) "[T]he jury may award punitive damages 'where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice.' 'Malice' is defined as intentional injury or 'despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.' 'Oppression' is defined as 'despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.'" *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 712 (2009) (quoting Cal. Civ. Code § 3294(a)). Punitive damages are available for whistleblower retaliation and wrongful discharge claims. *Weinstein*, 2014 WL 5602510, at *9–10.

The Court agrees with IDBNY. Besides the termination itself, there is no

evidence that IDBNY acted in an egregious or despicable manner. When "[t]he only evidence of wrongful conduct directed toward [the plaintiff] [i]s h[is] termination for an improper reason," the jury may not award punitive damages "because such action is not vile, base or contemptible." *Scott v. Phoenix Sch., Inc.*, 175 Cal. App. 4th 702, 716 (2009). The Court therefore grants summary judgment on Plaintiff's prayer for punitive damages.

### D.  Civil Penalties

Finally, IDBNY argues that it is not liable for civil penalties under section 1102.5(f). (Mot. 13.) Subsection (f) provides that, "[i]n addition to other penalties, an employer that is a corporation or limited liability company is liable for a civil penalty not exceeding ten thousand dollars ($10,000) for each violation of this section." Cal. Lab. Code § 1102.5(f). IDBNY argues that it is a chartered bank, not a corporation or limited liability company, and is therefore not liable for civil penalties.

IDBNY does not present any evidence of their form of business. Moreover, according to the California Secretary of State's website, IDBNY does indeed appear to be a corporation. *See* Business Search, *California Secretary of State*, http://kepler.sos.ca.gov (search for "Israel Discount Bank of New York" under "Corporation Name") (last visited Feb. 2, 2016).[13] Thus, the Court cannot conclude that Plaintiff is not entitled to civil penalties.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

---

[13]  The Court may take judicial notice of information available on government websites. *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015) (taking judicial notice of a business entity profile on the California Secretary of State's website).

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** IDBNY's Motion for Summary Judgment with respect to Plaintiff's prayer for punitive damages, and hereby dismisses said prayer. IDBNY's Motion is **DENIED** in all other respects. (ECF No. 18.)

**IT IS SO ORDERED.**

February 9, 2016

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**